PER CURIAM.
P.O., the mother, timely appeals an order terminating her parental rights as to her minor daughter, S.S. While we ultimately affirm the order of the trial court, we write to address appellant’s claim that the failure of the Department of Children and Families (“DCF”) to make sufficient efforts to assist her in complying with her case plan warrants reversal.
In February of 2000, DCF filed a verified shelter petition for the minor child S.S. The petition alleged S.S. had been left alone for over four (4) hours with inadequate supervision on December 27, 1999, that the mother, P.O., had tested positive for cocaine in January 7, 2000, and that S.S. had been located with her parents [1] at a motel on February 2, 2000, where it was suspected P.O. was spending a tax refund check on drugs. Both parents admitted they were unemployed at that time. DCF *361 referred P.O. to the Counseling and Recovery Center (“CRC”), a women’s recovery center for substance abuse.
P.O. met with CRC intake counselor Sue Lawrence on February 8, 2000, for a substance abuse assessment. As will be discussed more in depth, infra, Ms. Lawrence made extraordinary efforts to assist P.O. in complying with her case plan. When Ms. Lawrence met with P.O. for this first time, P.O. was experiencing severe depression, had trouble keeping a job, and was basically homeless. P.O. admitted she had been using alcohol and marijuana for at least ten years, and that she had begun using crack cocaine over the past year. Ms. Lawrence recommended P.O. enter CRC’s intensive day treatment program, which would allow P.O. to work outside the center, and exercise visitation with S.S. If P.O. could not maintain sobriety within the auspices of the day treatment program, residential treatment would be recommended.
P.O. returned at the end of February to begin her treatment. This visit did not go well; P.O. refused to sign in as required and left the center on the second day of treatment. Thereafter, Ms. Lawrence worked on getting P.O. back into the day program, and P.O. was readmitted in March of 2000. P.O.’s attendance was sporadic. She tested positive for cocaine twice during this time period, and her counselor recycled her partly through the first phase of the treatment due to behavioral and attendance issues. By July 2000, P.O. had progressed to the second phase of treatment. However, approximately one month later, she was discharged by her new counselor, due to a lack of progression in treatment.
Meanwhile, DCF had drawn up a case plan for P.O. and the father, which was accepted by the court in April of 2000. The case plan had a goal of reunification with a target date in December of 2000. The case plan required P.O. to submit to a parenting evaluation and follow all recommendations, obtain and maintain a stable income and safe drug-free housing, successfully complete a drug and alcohol abuse evaluation and follow all recommendations, successfully complete an anger management program, and notify DCF of any changes in her address within 72 hours. Thereafter, DCF and the parents reached a mediated agreement and S.S. was placed with the maternal grandparents. Then, around the time P.O. was discharged from CRC, DCF filed a petition to adjudicate S.S. dependent. An adjudication of dependency was entered on August 28, 2000. Temporary physical custody remained with the maternal grandparents. Then, per the grandparents’ request, S.S. was removed from their home and placed in foster care in October of 2000.
Subsequent to her discharge from CRC, P.O. suffered a relapse and contacted Ms. Lawrence, requesting assistance with getting into a residential treatment program. There was no residential space at CRC at that time. However, Ms. Lawrence offered to readmit P.O. at CRC as an interim client, which would have allowed her to wait for a residential bed to open up. P.O. was not receptive. Ms. Lawrence then gave P.O. directly, and her counsel at the time, contact information for a number of other residential programs.
Ms. Lawrence met with P.O. in person on September 25, 2000. Ms. Lawrence recommended P.O. enter a long-term residential program; however, P.O. was interested only in entering a 28 day detoxification program, which Lawrence did not believe was sufficient. After this meeting, Lawrence did not hear back from P.O. until her new counsel contacted Lawrence in November of 2000. Once *362 again, Lawrence provided information on a number of residential programs. Lawrence also tried finding P.O. room at residential programs between that time and early 2001; however, she could not find any openings. Undeterred, Lawrence arranged to have P.O. readmitted at CRC, for the third time, as an interim client. P.O. came in late February 2001, stayed for a few days, and then left. She acknowledged she was still using crack cocaine at this time. Finally, in March of 2001, Lawrence contacted P.O.’s counsel and informed her P.O.’s case was going to be closed.
April 10, 2001, DCF filed a verified petition for the termination of parental rights as to both parents. As to P.O., the petition moved for termination on two grounds: (1) that she had engaged in conduct that threatened the life or well-being of the child irrespective of the provision of services, and (2) that she had materially breached the terms and conditions of her case plan. § 39.806(l)(e),(e), Fla. Stat. (2001). The matter came before the court in November of 2001.
At the adjudicatory hearing, it became abundantly clear DCF provided few, if any, bona fide services to P.O. during the pendency of her case plan. When S.S. was adjudicated dependent, DCF family services counselor Nicole Beatty was assigned as her personal counselor. Ms. Beatty testified in addition to the children to whom she is assigned, she also provides services to the parents of those children. Certainly she did not do such in the instant case. Although Ms. Beatty made the initial referral to CRC for P.O., she never met with P.O., nor did she follow P.O.’s progress while in CRC treatment. Ms. Beatty’s failure to engender contact with P.O. was exacerbated by the fact P.O.’s case plan suffered from many infirmities, including its failure to provide how many, much less any, face-to-face meetings were to be held between P.O. and DCF caseworkers, an omission in direct contravention of section 39.601(l)(c), Florida Statutes (2001). When questioned why DCF failed to provide any services to P.O., Beatty responded she had basically delegated the task of assisting P.O. in complying with her case plan to CRC, “like she does in all her cases.”
The court ultimately found there were clear and convincing grounds for termination, including P.O.’s failure to comply with her case plan, and that termination of P.O.’s parental rights was in S.S.’s best interests. §§ 39.809(1), 39.810, 39.811, Fla. Stat. (2001).
Section 39.806(l)(e), Florida Statutes, provides:
A petition for termination of parental rights may also be filed when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child or the child’s placement in shelter care, whichever came first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department [DCF] to make reasonable efforts to reunify the parent and child ....
While P.O. can hardly make a good faith argument that she substantially complied with her case plan, she argues she should not be penalized for such, alleging DCF failed to make reasonable efforts to reunify her and S.S. While this contention has considerable merit, it does not carry the day in the instant case. We agree with *363 P.O. that DCF failed to comply with its statutorily mandated duties. DCF failed to provide any real services to P.O., acknowledging it had delegated the provision of such to a treatment center, CRC, which according to DCF agent Nicole Beatty constitutes standard DCF protocol. This court has frowned on similar conduct in the past. See P.A. v. Dep’t of Health and Rehabilitative Servs., 685 So.2d 92 (Fla. 4th DCA1997).
In P.A. this court reversed an order of termination that had been based on a mother’s failure to substantially comply with her case plan, finding the mother had in fact complied with the four goals of her case plan. In addition, this court noted the Department had failed to monitor her progress or help her receive the services she needed to become a capable parent, instead delegating those duties to an employee of the mental health center where she had been undergoing treatment. In this vein, the court provided, “germination would not have been proper if [the mother’s] ability to comply was affected by the department’s failure to provide reasonable assistance.” Id. at 93. Here, unlike the mother in P.A., the evidence established P.O. had in fact failed to substantially comply with the tasks of her case plan. Although DCF failed to make “reasonable efforts” to reunite P.O. with S.S., we do not find P.O.’s failure to substantially comply with her case plan was due to that lack of reasonable efforts on DCF’s behalf. CRC, primarily through Ms. Lawrence, bent over backwards in its attempt to help P.O. comply with her case plan, admitting her into its program on three separate occasions and apprising her of other available treatment facilities. Moreover, CRC had the means of providing P.O. with all of the various treatments she needed, providing both parenting and anger management courses in addition to substance abuse treatment. It is clear the crux of P.O.’s case plan was the resolution of her drug problem. Yet, over the course of her case plan, P.O. persisted in her drug usage, and evidenced resistance to treatment, in no small part due to behavioral issues. P.O.’s failure to substantially comply with her case plan, especially those requirements relating to drug treatment, constitutes sufficient grounds for the termination of her parental rights as to her daughter, S.S. § 39.806(l)(e).
P.O.’s additional arguments concerning deficiencies in the case plan itself are unconvincing. P.O. evinced a detailed and accurate knowledge of the elements of, and her responsibilities under, her case plan, yet failed to substantially comply with those requirements.
We further find the trial court’s finding that termination was in S.S.’s best interests is supported by the record. P.O.’s additional contention the trial court erred in appointing a guardian ad litem is without merit. A trial court may appoint a guardian ad litem for a minor child at any stage of the proceedings. See Fla. R. Juv. P. 8.215(a),(b).
Though we have ultimately approved of the order of termination, in no way do we approve of DCF’s actions leading up to, and during, the termination proceedings. We urge DCF to comply with its statutorily mandated duties under chapter 39.
AFFIRMED.
GUNTHER and HAZOURI, JJ., concur.
POLEN, C.J., concurs specially with opinion.

. The termination of the father’s parental rights have been appealed in a separate case pending before this court, case No. 4D02-2266.